### Robert Edwards v. The State.

#### No. 3774. Decided November 3, 1915.

#### Rehearing denied November 17, 1915.

**1.—Theft of Cattle—Accomplice—Corroboration—Sufficiency of the Evidence.**

Where the accomplice testified that he and the defendant stole the alleged animal, butchered and divided it, and it was shown that said accomplice sold the hide of said animal, and a part of the property purchased with the proceeds of the said stolen hide was traced directly to the defendant, and other circumstances tended to connect him with the crime, there was sufficient corroboration to sustain the conviction.

**2.—Same—Rule Stated—Corroborating Testimony.**

The necessary corroborating testimony does not have to show in and of itself that the accused was guilty of the theft; all it was necessary to prove, after it was proven that the alleged animal was stolen, independent of the accomplice testimony, were facts and circumstances that tended to connect the accused with the crime. Following Jernigan v. State, 10 Texas Crim. App., 546, and other cases.

**3.—Same—Case Stated—Corroboration.**

Where it was shown, independent of the accomplice testimony, that the defendant knew that the accomplice would be in a certain town on a certain day with money to buy flour, etc., for the defendant, and that said money was the proceeds of the hide of the stolen animal, and said flour, etc., which was the proceeds of said stolen hide, was traced to the possession of the defendant, the corroboration was sufficient, tending to connect the defendant with the theft, although he introduced testimony that said money came from another source.

**4.—Same—Charge of Court—Sufficiency of the Evidence.**

Where, upon trial of theft of cattle, the court submitted, together with his main charge, such requested charges as applied to the facts of the case, and the charge on alibi, was not on the weight of the testimony, and required that the accomplice testimony must be corroborated so as to tend to connect the defendant with the offense charged, the same was sufficient, and the evidence sustained the conviction, there was no reversible error.

Appeal from the District Court of Austin. Tried below before the Hon. Frank S. Roberts.

Appeal from a conviction of the theft of cattle; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Duncan & Duncan,* for appellant.—On question of insufficiency of the evidence: Romaro v. State, 5 S. W. Rep., 663; Burke v. State, 7 S. W. Rep., 873.

On question of corroboration: Hanson v. State, 11 S. W. Rep., 37.

On question of court's charge on weight of evidence: Johnson v. State, 114 S. W. Rep., 1180.

*C. C. McDonald,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant was convicted of cattle theft, and his punishment assessed at two years confinement in the State penitentiary.

Wesley Shelly testified for the State, and testified he and appellant entered the pasture of Mr. E. B. Wilson, roped a cow and took her to the home of appellant. There they butchered her and divided the meat. He says they buried the entrails near the place where the cow was butchered, and he carried the head and hide with him in his buggy, and he buried the head on his place. That he agreed to take the hide to town and sell it, and they were to divide the money received for the hide. He then testifies to selling the hide to Mr. Barder on Monday following, and says that appellant sent him word by King Jackson to purchase him some flour and other articles and send them to him by Louis Brown. Mr. Barder testified he purchased a red cow hide from Wesley Shelly, and paid him $6.40 for the hide; that Mr. Palm brought a cow's head there and fitted it to the hide—that it was the same color as the hide, and fitted the hide he had purchased. There was no brand on the hide, but there was a hole on the hip of the hide about six inches square. This head had been found on Shelly's place where he admitted he had buried it.

King Jackson testified that appellant, upon learning that he was going to town, requested him to tell Wesley Shelly to send him his flour by Louis Brown. How appellant knew Shelly would be in town that morning is not disclosed, unless Shelly's testimony is true.

Ed Kirkpatrick testified that on that Monday he sold Wesley Shelly two sacks of flour, two buckets of lard, 25-pound sack of salt, and a can of oil. Louis Brown testified that on that Monday Wesley Shelly got him to carry to appellant a sack of flour, a bucket of lard, and something else in a sack, he did not remember what it was.

It is thus seen that Wesley Shelly sold the hide of the stolen cow to Barder, and a part of the property purchased with the proceeds of the stolen property is traced direct to appellant. This certainly tends to connect him with the theft. A jury would naturally inquire how did he know Shelly would be in Bellville that day, how did he know he would have the money to buy the flour, and why on that day of all days did he send him word to send his flour? Appellant admits getting these articles, and admits sending word by King Jackson to send him the flour by Louis Brown, and that Louis Brown brought the flour and articles and delivered them to him, but he undertakes to explain that he had borrowed $10 from Herman Granon, and had loaned Shelly

$5 of this borrowed money, But when Herman Granon was called as a witness he said he did loan appellant $10, but said it was about three years before the date of this theft, and this would not explain why appellant knew Shelly would be in Bellville on that Monday with money to buy flour. Shelly also testified that the entrails and an unborn calf were buried on appellant's place, at a certain place, describing it. Officers went to this place and found where a hole had been dug, and they say there was a fearful scent in the hole, but no entrails were found and no unborn calf, but within about one hundred yards of appellant's house the body of an unborn calf was found. Joe Arnold testified he was living on Mr. Wilson's place and was looking after his cattle. That he missed three or four of these cattle the latter part of December or first of January. One was a red cow; she was fat and large, and was with calf at the time he missed her. The cow had broad horns. He further testified he examined the hide found at Barder's; that taking into consideration the color and size of the cow, the hide looked to him to be about as good a comparison as could be found anywhere. He tells of other facts and circumstances that led him to believe it was Wilson's cow. Thus a cow is shown to be missing, independent of the testimony of Wesley Shelly, and facts and circumstances are proven that would support the conviction of Shelly, as the horns and head and fresh beef were found on his place. And we think when a portion of the proceeds of the sale of this stolen cow is traced direct to appellant, and other circumstances in the case, the testimony, independent of the testimony of Shelly, tends to connect appellant with the theft. The necessary corroborating testimony does not have to show in and of itself that appellant was guilty of stealing the cow. After it has been proven that a cow had been stolen, all it was necessary to prove, independent of the accomplice's testimony were facts and circumstances that tended to connect him with the crime. In Jernigan v. State, 10 Texas Crim. App., 549, this court, speaking through Judge Hurt, said: "This one hundred dollar bill, being the proceeds of the sale of the cattle, can be and is familiarly termed the fruits of the crime, and occupies the same relation as a means of proof in a great many cases as the possession of recently stolen property does to theft. In this case the bill constitutes the fruits of the theft. It follows, therefore, that if the defendant is shown to have had guilty possession of or connection with this bill, that fact would be a strong corroboration of the accomplice. Two things are necessary, however, to make the transaction criminative: First, this must be the bill for which the cattle were sold; second, the defendant must not only have been informed of that fact but that the cattle were stolen, thus constituting the bill a fruit of the theft." It is shown by the undisputed testimony, independent of the testimony of the accomplice, that the flour and lard received by appellant were fruits of the crime. Now does the evidence measure up to the second requirement? It does not have to be proven by positive testimony, but can be shown by circumstantial evidence. Independent of the testimony of the accomplice, by

King Jackson, it is shown that appellant knew that Shelly would be in Bellville that day with money to buy the flour, etc. How did he know this fact? Shelly did have the money received from a sale of the stolen hide. He gets and keeps these proceeds of the stolen property. When told that Shelly had said he, Shelly, had sold him a part of the beef in payment of a debt due by Shelly to him, he denied Shelly was indebted to him in any sum, and yet the flour and lard are found in his possession. The evidence justifies a finding that when he received these articles he knew they were the proceeds of the hide of the stolen animal. This is the sole contention briefed by appellant's counsel, and we are frank to admit that it is not entirely free from difficulty, but a careful study of the record convinces us the corroboration is sufficient.

The court gave six of the special charges requested by appellant, and they, together with the court's main charge, fully covered the issues in the case, and it was not, therefore, necessary to give the other two special charges requested.

The charge on alibi is clothed in language frequently approved by this court, and is not subject to the criticism that it assumes facts against the defensive theories. It was only necessary that the corroborative testimony "tended to connect the defendant with the offense charged,"—it was not required that such testimony connect the defendant with the crime. If such proof was made, independent of the testimony of the accomplice, there would be no need of the accomplice testifying.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied November 17, 1915.—Reporter.]